THIS case was argued on exceptions to the master’s -report. Those exceptions will be considered under the *90 following beads : Mr. Pringle’s bond ; the house ; the charge of commissions ; the sale of stock ; interest.
An agent selling a nouse for less than price an(?cr¿ ditmg the full by^ though the pnce tinned was the full value.
As to the bond. (Not material to be reported.) '
2. As to the house. Mr. Poyas owned a house in this city, which Mr. Fabre had sold at auction for cash on September, 1791. It brought between 900?. and 1000?- Mr. Fabre gave credit to Mr. • Poyas in his ]j00ks for 1800?, on account of his house and informed him of it ; 1200?. is stated to have been the worth of it when it was sold, and the difference between that sum and 1800L is claimed. On the 26th of January, 1799, Mr. Fabre credited Mr. Poyas in his books with the The counsellor the defendant insisted that aá 1200?. was the real value of the house, the complainants ought not to be allowed 1800?. They considered the credit given by Mr. Fabre of 600?. more than the ’value of the house, as an executory contract, not founded on any consideration, as nudum pactum, and therefore void. To the legal validity of a contract consideration of some sort or other, is essential; but he who deliberately makes a promise to another, raising in him an expectation of benefit, is morally bound to perform it,’ and a slight consideration will he sufficient to render it a legal obligation. The contract in this case cannot be considered as executory, for there does not remain any thing to be done. Considered as a contract it was executed by Mr. Fabre. He informed Mr. Poy-as that be had sold the house for 1800?. credited him for 1800?. and expressed his willingness to make good, and to indemnify him for the difference between that sum and 2000?. Ought this contract to be set aside? It is unnecessary to discuss this point. However it may be as weJ.1 to observe here, that if free agents will with open eyes ratify even invalid agreements, a Court of Equity will not relieve them 4 see Pow. on con. 2d part, p. 16s.
Mr. Poyas died in June, 1799, and never knew of this charge against him of 600?. If Sir. Fabre intended to make it, ho ought to have made it sooner than he did and informed Mr. Poyas of it. Fides servanda. *91 But my decision respecting- this 600Z., is founded on another ground: Mi*. Fabre’s departiere from bis instructions. It is said he did not depart from- them 5. and to prove this a letter from Mr..Poyas.to Mr.. Fabre, dated February 25, 1797, is- relied on.. This letter- says “• I think the late fire at Savannah, may help the sale of it (alluding- to liis house), if any burnt out there should, remove to Charleston ; but let this- be as it may,, you have my carte blanche,, to do the best you can,, and I will be satisfied.”' This-, expression- certainly imparts extensive discretionary power, and considered' by itself would be- conclusive ; but it was accompanied by another letter dated 1 January, 1797, the contents of which it confirmed. This other says-.« As-to the house-if you find it unsold at your arrival,. I confirm- my desire that it may be advertised for sale,, among- the first things you do, and to sell payable at the instalments-mentioned, if you can obtain 2400Z., (or 800Z. per instalment) or even 2000Z. nett 0® London.. If neither of these can be obtained then you will let it in the best manner you can.” It appears from these letters: that Mr. Poyas considered his house as worth 2000L He had received a letter dated 28th June,. 1796, from Mr. Price, saying that he expected to obtain that sum for it. It is evident that Mr. Fabre thought he had violated his instructions in the sale of this house ; for in his letter dated 1st February, 1798, in which he informs Mr. Poy-as of his having sold it for 1800Z. he offers indemnity for 200Zo the difference between 1800Z. and 2000Z. at which, he says, it had been limited. Mr. Poyas on the-the 8th of June, 1798, writes in reply that he was convinced, that what he had done was for the best, and considers the suggestion of indemnity as unkind. The doubt which the expression carte blanche is calculated to raise, is completely done away by the construction put on his instructions by Mr.Fabre himself. The 600Z. must be accounted ior.
Comm;ss-lcms not originally be charged, “d afterwards be c,aüy as {¡1(3 aSent y legacy tor his services.
3. As to the charge of commissions. Mr. Fabre in , , his letter of the 6th of February, 1792, says to Ins un- *92 cjCí Mr. Poyas, after speaking of winding up his concerns liere> “ I will help towards it by charging no commissions ,*” and in another letter dated on the 4th of March, 1793, he says, “ You will observe as in the last year’s account, no commissions are charged, which will °fhelp on your side considerably. I pushed on as much as possible to close your concerns, in order to avoid such charges which here are extravagant, being,” &c. &c. The following memorandum for Mr. Fabre was made by Mr. Poyas on the 20th of November, 1793, ** You will in course endeavor to settle finally with Mr. B. and also to bring the affairs of G. & Co. to a final issue, as well as any other old balance that may be outstanding. This money or any further sums you may receive for rent, dividends of stock, &c. after deducting the commissions to your house, to be vested and by' letters which were produced it is clear that by your house, was meant the house of Fabre and Price, although that copartnership was dissolved in 1792. It was contended that this memorandum revived the right of charging commissions, which had been previously relinquished by Mr. Fabre; however this may be, it is certain that commissions were not intended to be charged by Mr. Fabre, and that they were not charged by him until the 1st February, 1799 ; for Mr. Price writing to Mr. Poyas on the 5th of February, 1795, observes, « I only remind you of the different conduct pursued towards you, and more particularly on your old concerns for the settlement of the whole were you charged with any commission? No.” And infolio 114 and 115 of Fabre and Piice’s book, Mr. Poyas’s account is brought down to the 4th of March, 1793, and a balance struck in his favor, and no commissions are charged. The memorandum at the foot of the account, furoishes additional proof that when the services were rendered for which commissions are charged there was no intention of charging them. Mr. Poyas never knew of this charge of commissions ; he died as has been mentioned in June, 1799, and he left a legacy of 5001. to Mr. Fa- *93 bre, which has been paid. Tbe inducement to this legacy is stated to be services rendered. Besides this legacy of 5001. be left Mr. Fabre a contingent legacy of one fourth of the residue of his personal estate, which is considerable. The contingency is the death of his daughter without issue ; she was well advanced in years before she married, has never had and probably never will have issue. If Mr. Fabre did his uncle’s business without charging commissions in prospect of a legacy from him, he was not disappointed. No commissions can be allowed for services rendered previous to Mr. Poy-as’s death ; but they must be allowed for services performed since that period. And as these services were performed here the allowance must be the usual mercantile commissions in this place.
complainant ticf^'c^ount* and falsifying geV^in it, the °!]!C1' , pen it, to set ciSwge^f'in-terest.
Executors fr-Jíing^broad! not bound to give security to pay a legd-contmgent-^ wberetbercis misconduct,
4. As to the stock. (Not material to be reported.)
5. As to interest. Mr. Fabre wrote to Mr. Biggin-son on the 9th of October, 1799, and enclosed in his letter a stated account, in which interest is calculated at 7 per cent. This interest is required by complainant$ hut as this account has been opened and the complainants have been permitted to falsify charges contained in It, it would be unreasonable to hold the defendants strictly to it. The copartnership of Poyas and Fabre, commenced in 1793, and continued until Mr. Poyas’s death, in 1799. Five per cent, must be allowed on the balances on accounts, between Mr. Fabre and Sir. Poy-as, until the dissolution of the copartnership.
The defendants pray to be protected in their ulterior eights i that is, that the money which may be decreed against Fabre’s estate may not be paid over without se- ° * curity for the contingent legacy. That the legacy is contingent is a reason for not ordering this security, Mrs. Higginson, the only daughter of Mr. Poyas, was the principal object of his bounty. Should she have issue the legacy given to Mr. Fabre will go to that issue, and should she not have issue, it may be a long time before the contingent legacy will become a vested one and payable. The testator has thought proper to repose *94 trust in Dr. Hamilton and Mr. Higginson, and it is not lightly to be presumed that they will abuse it. This Court will not compel even an insolvent executor to giv& secupity» unless it should appear that he is wasting the assets of his testator, or acting improperly. There is no imputation of improper conduct against Dr. Hamilton, the trustee of Mrs. Higginson; nor against Mr. Higginson, the surviving executor of Mr. Poyas. They are therefore left to the uncontrolled exercise of the rights that belong to them, in their respective characters.
Mr. Che ves, for complainant.
Mr. Ford, for defendant.
Let the accounts be referred back to the master.
There was no appeal from this decree.